**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **NORMAN L. PIMENTEL,**<br>**Plaintiff,**<br>**v.**<br>**COUNTY OF FRESNO, et al.,**<br>**Defendants.** | **1:10-cv-01736-OWW-DLB**<br><br>**MEMORANDUM DECISION REGARDING DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT (Doc. 39)** |

## I. INTRODUCTION.

Plaintiff Norman L. Pimentel ("Plaintiff") brings this action for damages against the County of Fresno and Jose Flores ("Defendants"). Plaintiff initiated this action in the California Superior Court, County of Fresno, on March 20, 2009. (See Doc. 8 at 20). Plaintiff filed a third amended complaint ("TAC") on June 23, 2011.

Defendants filed a motion to dismiss the TAC on July 8, 2011. Plaintiff did not file timely opposition to the motion. Plaintiff's counsel appeared a the hearing on August 29, 2011 and orally opposed the motion.

## II. FACTUAL BACKGROUND.

From March 18, 2008 through August 25, 2008, Plaintiff was a 67 year-old inmate and pre-trial detainee in the Fresno County

Jail. As Plaintiff had previously been an inmate, the County of Fresno knew Plaintiff was suffering from pyschiatric and seizure disorders. Initially, Plaintiff was placed in an isolated, padded cell without furniture commonly known as a "rubber room." After about three days, Plaintiff was assigned Plaintiff to a cell with bunk beds that did not have any ladder or other device to assist Plaintiff in climbing onto or off of the top bunk.

On or about April 25, 2008, Plaintiff was trying to descend from the top bunk when he fell to the concrete floor where his L2 vertebrae was fractured; he was rendered momentarily unconscious. Immediately after his fall, jail guards entered his cell and observed Plaintiff on the floor. Plaintiff advised the guards that he had just fallen from the top bunk and was in extreme pain. The officer's placed Plaintiff in a wheelchair and took Plaintiff to a court appearance. After Plaintiff's court appearance, Plaintiff was taken to the jail clinic, prescribed Vicoden, and sent to a cell with no upper bunk.

On April 30, 2008, Plaintiff was taken to the hospital. Surgery was performed on Plaintiff on May 1, 2008. Plaintiff requested medical care, physical therapy, and diet as prescribed by his physicians as necessary, but was denied such care.

**III. <u>LEGAL STANDARD</u>.**

Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990). To sufficiently state a claim to relief and survive a 12(b) (6) motion, the pleading "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise

a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In other words, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted).

The Ninth Circuit has summarized the governing standard, in light of *Twombly* and *Iqbal*, as follows: "In sum, for a complaint to survive a motion to dismiss, the nonconclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir.2009) (internal quotation marks omitted). Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri*, 901 F.2d at 699, or where the allegations on their face "show that relief is barred" for some legal reason, *Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

In deciding whether to grant a motion to dismiss, the court must accept as true all "well-pleaded factual allegations" in the pleading under attack. *Iqbal*, 129 S.Ct. at 1950. A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988

(9th Cir.2001). "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir.2003). "A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

## IV. DISCUSSION.

### A. Section 1983 Claim

Plaintiff asserts a section 1983 claim against the County of Fresno and four Doe Defendants. (TAC at 11-13). Specifically, Plaintiff complains that (1) Doe Defendants failed to provide timely medical care to Plaintiff after he fractured his back; and (2) the County of Fresno employs a housing policy at the Fresno County Jail that is deliberately indifferent to the risk of harm posed by upper bunks to certain types of detainees. The Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's protection against cruel and unusual punishment, applies to pretrial detainees. *See, e.g., Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1241-42 (9th Cir. 2010).[1]

///

[1] Although the Ninth Circuit has suggested that the Eighth Amendment may provide only "a minimum standard of care" for determining the rights of pretrial detainees, *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003), "deliberate indifference" remains the applicable standard under binding Ninth Circuit precedent, *Clouthier*, 591 F.3d at 1242.

**1. Monell Claim**

Municipalities "are 'persons' under 42 U.S.C. § 1983 and thus may be liable for causing a constitutional deprivation." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). In a section 1983 case, a municipality cannot be liable for a constitutional violation on the basis of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A municipal entity is "liable only when 'action pursuant to official municipal policy of some nature caused a constitutional tort.'" *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) (quoting *Monell*, 436 U.S. at 691). The "official municipal policy" can be an expressly adopted policy or "a longstanding practice or custom." *Id.* (internal quotation marks omitted).

A local governmental body may be liable if it has a policy that amounts to a failure to protect constitutional rights. *E.g.* *Mortimer v. Baca*, 594 F.3d 714, 722 (9th Cir. 2010) (citing *Berry v. Baca*, 379 F.3d 764, 767 (9th Cir. 2004). A merely negligent policy does not violate the Constitution, rather, a policy amounts to deliberate indifference only where:

> the need for more or different action is so obvious, and the inadequacy of the current procedure so likely to result in the violation of constitutional rights, that the policymakers can reasonably be said to have been deliberately indifferent to the need.

*Id.* at 723 (quotations omitted) (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477-78 (9th Cir. 1992)); *accord City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989) (violation exists where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that

the policymakers of the city can reasonably be said to have been deliberately indifferent to the need").

The Ninth Circuit employs a four-step framework for resolving claims of deliberate indifference against a municipal entity. *Mortimer*, 594 F.3d at 717-18 (citing *Berry*, 379 F.3d at 773). In order to prevail on a deliberate indifference claim against a municipality, a plaintiff must establish: (1) violation of a constitutional right; (2) the existence of a municipal policy; (3) that the risk of constitutional violations under the policy is so likely that the need for an improved policy is obvious; and (4) that the challenged policy caused the constitutional injury complained of. *See id.*

After three amended complaints, the theory underlying Plaintiff's *Monell* claim has morphed from a medical care claim into a claim based on the County's failure to assign Plaintiff to a cell without upper bunk-beds. The TAC does not allege sufficient facts to give rise to a plausible inference that the County's policies are deliberately indifferent to the risks posed to certain inmates by cells with upper-bunks. According to the TAC:

> The County...operates medical care housing as required by the California Code of Regulations Title 24, § 1231.2.14, and...has "clinic" cells and other cells that do not have any upper beds...these clinic cells were available for housing Plaintiff.

(TAC at 4). The TAC further alleges that Plaintiff was initially placed into a "rubber room for his psychiatric disabilities for about three days" upon first entering the Fresno County jail. (TAC at 3). The TAC's allegations establish that the County has policies and procedures in place addressing the medical needs of detainees with psychiatric disabilities and detainees who may have

a difficult time accessing upper bunks due to physical conditions.

The only allegation that supports Plaintiff's conclsuory contention that the County is deliberately indifferent to the risk posed to certain inmates by upper bunk beds is Plaintiff's allegation that he was not properly assigned to a cell without an upper bunk; this allegation is insufficient to support a *Monell* claim. *Inter alia*, Plaintiff does not allege that other detainees subject to similar risk of injury were improperly assigned to cells with bunk-beds or that the County is aware of recurring injuries caused to such detainees by assignment to cells with bunk-beds. Allegations of a single instance of misconduct, without more, are insufficient to establish a municipal custom. *See, e.g., Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1996) ("Proof of random acts or isolated events are insufficient to establish custom") (citation omitted); *see also Merritt v. County of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989) ("Mere proof of a single incident of errant behavior is a clearly insufficient basis for imposing liability on the County); *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").

Plaintiff's Monell claim against the County of Fresno is DISMISSED, without prejudice. Plaintiff will have one more opportunity to amend his claim to state a cognizable Monell claim.

**2. Medical Care Claim**

Plaintiff now contends that the guards who discovered

Plaintiff on the floor in his cell violated Plaintiff’s constitutional rights by failing to take him directly to a medical care provider. (TAC at 13). Claims based on the failure of jail staff to address a detainee’s medical needs are analyzed under a "deliberate indifference" standard. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1241-42 (9th Cir. 2010).[2] A correctional officer is liable for denying needed medical care to a detainee only if the officer “knows of and disregards an excessive risk to inmate health and safety.” *E.g. Lolli*, 351 F.3d at 419. "In order to know of the risk, it is not enough that the person merely 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, [] he must also draw that inference.'” *Id.* (quoting *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002).

Based on the allegations advanced in the TAC and reasonable inferences derived from such allegations, Doe Defendants had knowledge of the following objective facts when they discovered Plaintiff’s injury: (1) that Plaintiff was in his late sixties; (2) that Plaintiff had fallen from the top bunk; (3) that Plaintiff had suffered an injury to his back; (4) that Plaintiff was unable to lift himself off of the floor after his fall; (5) that Plaintiff was in extreme pain; and (6) that Plaintiff was incapable of ambulating by himself. A reasonable person on notice of the facts apparent to the Doe Defendants would understand the need for prompt

---

[2] Although the Ninth Circuit has suggested that the Eighth Amendment may provide only "a minimum standard of care" for determining the rights of pretrial detainees, *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1120 (9th Cir. 2003), “deliberate indifference” remains the applicable standard under binding Ninth Circuit precedent, *Clouthier*, 591 F.3d at 1242.

medical attention. A reasonable person on notice of the facts apparent to the Doe Defendants would also understand that placing Plaintiff in sitting position for an extended period of time and subjecting Plaintiff to the physical impacts of transporting him to and from court in a wheelchair was certain to prolong Plaintiff's extreme pain and likely to exacerbate Plaintiff's pain, as well as his medical condition. The TAC sufficiently alleges that Plaintiff had a serious medical need, and that Doe Defendants' response to Plaintiff's medical need was deliberately indifferent to the serious risk that failure to provide immediate medical care could result in further significant injury or the "unnecessary and wanton infliction of pain." *See, e.g., Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (noting that deliberate exposure to unnecessary pain may constitute deliberate indifference under Eighth Amendment standard).

**B. ADA Claim**

The TAC alleges that the Social Security Administration declared Plaintiff "permanently disabled because of mental conditions" in 2003, and that Fresno County Jail denied Plaintiff accommodation for his disability in violation of the Americans With Disabilities Act ("ADA") by failing to assign Plaintiff to a cell without bunk-beds. (TAC at 14-15).

In order to state a claim under the ADA, Plaintiff must allege (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated

against by the public entity; and (4) the exclusion, denial of benefits, or discrimination occurred by reason of his disability. *E.g., Simmons v. Navajo County, Arizona*, 609 F.3d 1011, 1021 (9th Cir. 2010). A plaintiff may establish that she was discriminated against "by reason of" her disability by establishing that her disability was a "motivating factor" in an official's decision to exclude the plaintiff from a service or program. *Id.* at 1022. Alternatively, a disabled person may carry her pleading burden by alleging facts which demonstrate that she was subjected to an undue burden because of a facially neutral law. *See McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004).

The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "Major life activities means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 28 C.F.R. § 35.104. To determine whether an individual is considered disabled under the ADA, courts must determine whether an individual has a mental or physical impairment that substantially limits a major life activity. *See, e.g., Toyota Motor Manuf., Kentucky, Inc. v. Williams*, 534 U.S. 184, 195 (2002).

The memorandum decision dismissing Plaintiff's second amended complaint provided the following analysis of Plaintiff's ADA claim:

> Plaintiff's conclusory allegation that he is disabled within the meaning of the ADA is insufficient. The SAC does not allege facts sufficient to support a reasonable inference that Plaintiff has a mental or physical impairment that substantially limits a major life

> activity. As Plaintiff has not alleged facts sufficient to support an ADA claim, it is unnecessary to reach Defendant's statute of limitations defense at this time. Tthe SAC's ADA claim is DISMISSED, without prejudice. This is the last time Plaintiff shall be afforded leave to amend.

(Doc. 35 at 7).

The TAC does not remedy the deficiencies identified in the memorandum decision dismissing the second amended complaint. Although the TAC alleges that Plaintiff was found to be disabled by the Social Security Administration in 2003, there are no allegations concerning the nature or extent of Plaintiff's disability.[3] The only detail provided in the TAC concerning Plaintiff's disability is that it concerns "mental conditions." The vague description provided in the TAC does not permit reasoned analysis of Plaintiff's ADA claim. Absent information describing Plaintiff's disability and its effect on his life activities, it cannot be determined whether failure to assign Plaintiff to a cell without bunk beds was tantamount to a denial of reasonable accommodation under the ADA. Nor is it possible to determine whether Plaintiff, because of his disability, was subjected to an undue burden by the County's policies. There is no discernible nexus between Plaintiff's "mental conditions" and the accommodation Plaintiff alleges he was denied. Plaintiff's ADA claim is DISMISSED, without prejudice. Plaintiff will have one more

[3] In fact, the TAC does not even allege that Plaintiff's disability continued from 2003 until the time of the incident underlying the instant action.

opportunity to amend to state a cognizable ADA claim.[4]

**C. Breach of Duty Claims**

The TAC advances a cause of action against the County and the Jail's Facility Administrator, Jose Flores, for "violation of mandated duties" based on (1) the failure to assign Plaintiff to a "clinic cell;" and (2) failure to provide Plaintiff timely and appropriate medical care after Plaintiff's fall. (TAC at 6-9). Plaintiff's medical care claim is identical to a negligence claim the court has already dismissed with prejudice.

The statute of limitations for a personal injury action in California is two years. Cal. Code Civ. P. 335.1. The statute of limitations begins to run when a plaintiff has cause to sue based on knowledge or suspicion of wrongdoing. *See, e.g., Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 803 (Cal. 2005) (citing *Bristol-Myers Squibb Co. v. Superior Court*, 32 Cal. App. 4th 959, 966 (Cal. Ct. App. 1995)); *accord E-Fab, Inc. v. Accountants, Inc. Services*, 153 Cal. App. 4th 1308, 1317 (Cal. Ct. App. 2007)("Generally speaking, a cause of action accrues at the time when the cause of action is complete with all of its elements."). As noted *twice* in previous memorandum decisions dismissing Plaintiff's prior complaints:

---

[4] Defendants contend Plaintiff's ADA claim is time barred. However, Plaintiff's have not addressed whether Plaintiff is entitled to tolling of the statute of limitations on his ADA claim for the time period during which he was in custody. As discussed in previous memorandum decisions, Plaintiff is entitled to tolling of the statute of limitations for on his section 1983 claim, and accordingly, the section 1983 claim advanced in Plaintiff's August 30, 2010 FAC is timely. To the extent Plaintiff's ADA claim relates back to the FAC, *see, e.g., Norgart v. Upjohn Co.*, 981 P.2d 79, 96 (Cal. 1999) (relation-back doctrine requires that the amended complaint must (1) rest on the same general set of facts, (2) involve the same injury, and (3) refer to the same instrumentality, as the original one), Plaintiff's ADA claim may be timely.

> The second negligence claim asserted in the FAC is premised on Defendants' alleged failed to provide treatment for Plaintiff's injury from April 25, 2008 to April 30, 2008. (FAC at 5). At the latest, the statute of limitations began to run on Plaintiff's second negligence claim on April 30, 2008 and expired on April 30, 2010. Plaintiff did not file his request for leave to amend his original complaint until July 23, 2010, almost three months after the statute of limitations on the second negligence claim expired. As the second negligence claim does not relate back to the original complaint, and because Plaintiff is not entitled to equitable tolling on his negligence claims against the County and its employees, the second negligence claim is time-barred. Plaintiff's second negligence claim arising out of alleged acts and omissions occurring between April 25, 2008 and April 30, 2008 is DISMISSED, WITH PREJUDICE.

(Doc. 35 at 11, Doc. 21 at 15-16). Plaintiff's breach of duty claim arising out of the alleged failure to provide appropriate treatment after Plaintiff's fall is DISMISSED WITH PREJUDICE.

Plaintiff's claim for breach of the purported duty to assign Plaintiff to a cell without bunk beds is not time barred. However, after four attempts to state a cognizable claim, the TAC remains deficient with respect to identifying any mandatory duty sufficient to give rise to liability under California law.

Under California's Government Claims Act (Cal. Gov. Code, § 810 et seq.), there is no common law tort liability for public entities in California; instead, such liability must be based on statute. *E.g., Guzman v. County of Monterey*, 46 Cal. 4th 887, 897, 95 Cal. Rptr. 3d 183, 209 P.3d 89 (Cal. 2009). Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty. *Id.* (citations omitted). California courts

construe the mandatory duty requirement strictly, "finding a mandatory duty only if the enactment 'affirmatively imposes the duty and provides implementing guidelines.'" *Id.* at 898 (citations omitted).

Plaintiff asserts violations of alleged mandatory duties set forth in the following regulations: (1) Title 15, California Code of Regulations section 1050(a); (2) Title 15, California Code of Regulations section 1208; and (3) Title 15, California Code of Regulations section 1200(a). The TAC does not sufficiently allege any violation of the regulations identified in the TAC.

Section 1050(a) requires development and implementation of "a written classification plan designed to properly assign inmates to housing units...". 15 Cal. Code. Reg. § 1050(a). The TAC does not allege that the County failed to develop and implement a written plan as required by section 1050(a). Rather, the TAC alleges that Plaintiff was not assigned to an appropriate cell "because of the flawed official policy in the written classification plan." Similarly, section 1208 requires development of a written plan for "identifying, assessing, treating, and/or referring any inmate...in need of medical, mental health, or developmental disability treatment at any time during his/her incarceration." 15 Cal. Code. Reg. § 1208. The TAC does not allege that a written plan was not developed for Plaintiff.

Finally, the TAC's allegations are insufficient to establish violation of section 1200(a), which provides:

> (a) In Type I, II, III and IV facilities, the facility administrator shall have the responsibility to ensure provision of emergency and basic health care services to all inmates. Medical, dental, and mental health matters involving clinical judgments are the sole province of the

> responsible physician, dentist, and psychiatrist or psychologist respectively; however, security regulations applicable to facility personnel also apply to health personnel.
>
> Each facility shall have at least one physician available to treat physical disorders. In Type IV facilities, compliance may be attained by providing access into the community; however, in such cases, there shall be a written plan for the treatment, transfer, or referral in the event of an emergency.
>
> (b) In court holding and temporary holding facilities, the facility administrator shall have the responsibility to develop written policies and procedures which ensure provision of emergency health care services to all inmates.

15 Cal. Code. Reg. § 1200. The only allegation related to the provision of emergency health services at Fresno County Jail is Plaintiff's allegation that he was not provided emergency medical care after his fall. Without more, the fact that Plaintiff was not provided with emergency medical care for his back injury does not give rise to a plausible inference that there is no provision of emergency and basic health care services at the Fresno County Jail. After numerous attempts, Plaintiff still has not pled a cognizable claim for violation of any mandatory duty under California law. Plaintiff's "violation of duty claim" is DISMISSED WITH PREJUDICE.

**ORDER**

For the reasons stated, IT IS ORDERED:

1) Plaintiff's Monell claim against the County under section 1983 is DISMISSED without prejudice;

2) Plaintiff's ADA claim is DISMISSED without prejudice;

3) Plaintiff's breach of duty claims under state law are DISMISSED WITH PREJUDICE; and

4) Defendants shall submit a form of order consistent with

this memorandum decision within five days of electronic service of this opinion.

IT IS SO ORDERED.

**Dated: September 19, 2011** **/s/ Oliver W. Wanger**
UNITED STATES DISTRICT JUDGE