Carey H. Johnson, # 40879
Celene Boggs Resong, #172577
STAMMER, McKNIGHT, BARNUM & BAILEY LLP
2540 West Shaw Lane, Suite 110 (93711-2765)
Post Office Box 9789
Fresno, CA  93794-9789
(559) 449-0571

Attorneys for Defendants, COUNTY OF FRESNO and CAPTAIN JOSE FLORES

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

*****

| | |
|---|---|
| NORMAN PIMENTEL,<br><br>     Plaintiff,<br><br>vs.<br><br>THE COUNTY OF FRESNO, and DOES 1 TO 50,<br><br>     Defendants. | Case No: 1:10-CV-01736-OWW-DLB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**<br><br>DATE:    August 29, 2011<br>TIME:    10:00 a.m.<br>CTRM:   3<br><br>(Honorable Oliver W. Wanger) |

On Monday, August 29, 2011, before the Honorable Oliver W. Wanger in Courtroom 3 of the United States District Court for the Eastern District of California, the Motion to Dismiss Plaintiff's Third Amended Complaint of Defendants the COUNTY OF FRESNO and CAPTAIN JOSE FLORES was heard.  All parties appeared through counsel.  After argument on the issues in open court and review and consideration of all of the pleadings submitted by counsel:

THE COURT FINDS that:

       1)    Plaintiff NORMAN L. PIMENTEL ("Plaintiff") is bringing an action for damages against the COUNTY OF FRESNO ("County"), CAPTAIN JOSE FLORES ("Flores"), and Does 2-20.

2)     The Government Tort Claim submitted by Plaintiff was dated June 4, 2008 and included only claims regarding the assignment of Plaintiff to a top bunk without a ladder and for failure to follow the directives of Plaintiff's neurosurgeon upon his return from the hospital. After rejection of the claim, Plaintiff filed the original complaint in the California Superior Court in and for the County of Fresno on March 20, 2009, alleging only a negligence cause of action against the County for assigning Plaintiff to a top bunk bed without a ladder or other means to assist Plaintiff in climbing onto and off of the top bunk which allegedly caused Plaintiff to fall to the floor when descending on April 25, 2008 and suffer injuries to his spine, back, and other parts of his body.  There were no other causes of action or factual allegations to support any claims regarding Plaintiff's care or treatment included in the original complaint.

3)     Plaintiff requested leave to amend his original complaint on July 23, 2010, and filed the First Amended Complaint ("FAC") on August 30, 2010 adding 42 U.S.C. § 1983 and California Elder Abuse causes of action as well as new negligence claims.  The FAC added allegations that Plaintiff was a 67-year-old, pre-trial detainee during his incarceration and that Defendants failed to ensure and provide emergency and basic health care services and adequate medical care after Plaintiff's fall, and the County failed to provide training and supervision regarding appropriate practices and procedures to provide adequate medical care.

4)     Defendants removed Plaintiff's action to federal court on September 21, 2010 and filed a motion to dismiss the FAC; the motion to dismiss was granted in its entirety. The California law claims based upon allegations that Plaintiff did not receive medical care from April 25, to April 30, 2008, were dismissed with prejudice.

5)     On March 4, 2011, Plaintiff filed a Second Amended Complaint ("SAC") restating all of the causes of action from the FAC and adding an Americans with Disabilities Act ("ADA") cause of action.  The SAC asserted causes of action labeled as follows:  Elder Abuse; Negligence and Negligence Per Se; Negligence and Negligence Per Se E.g., California Government Code §856(c)(2) Title 15 CCR §1208; Violation of *Monell:*  Longstanding Pattern and Practice; and Americans with Disabilities.

\\\

6)      Among the other allegations, the SAC added allegations that:  Plaintiff had previously been an inmate and the County knew he was suffering from psychiatric and seizure disorders; Plaintiff was incarcerated from March 12, 2008 to August 25, 2008 and for the first few days of his incarceration he was allegedly placed in a "rubber room" before being assigned to a top bunk without a ladder or other device to assist climbing on and off; following his fall and on April 25, 2008, Plaintiff was taken to the jail clinic where he was prescribed Vicodin and reassigned to a bed without an upper bunk; and that Plaintiff had submitted a claim on June 4, 2008 alleging his slip and fall from a top bunk and the failure to provide treatment requested by his physician.  As before, the California negligence causes of action included distinct claims: assignment of Plaintiff to a top bunk causing him to fall and injure his back; failure to ensure treatment from April 25, 2008 to April 30, 2008; and failure to provide proper follow-up therapy, diet, and treatment from May 2008 until his release on August 25, 2008.

7)      Defendants filed a motion to dismiss the SAC on March 24, 2011.  That motion was granted in its entirety, but without prejudice as to the 42 U.S.C. § 1983 claims, the ADA claim, and the California negligence claim regarding Plaintiff's assignment to a cell with a bunk bed.  Plaintiff was given 15 days after the May 26, 2011 service of the memorandum of decision regarding the motion to dismiss to file a new complaint.

8)      Plaintiff filed his Third Amended Complaint ("TAC") late on June 23, 2011 alleging the following causes of action:  "Count One Violation of Mandated Duties"; "Count Two Monell:  Longstanding Pattern and Practice"; "Count Three Violation of the Eighth Amendment"; and "Count Four:  Americans with Disabilities."  In an attempt to state an ADA qualified disability, the TAC added a new factual allegation that Plaintiff was declared permanently disabled by the Social Security Administration in 2003.  It also separated the 42 U.S.C. § 1983 claim into two causes of action, the first against the County for a policy/practice which allegedly caused Plaintiff's assignment to an upper bunk without a ladder in the old jail and the second against "defendant guards" designated as Does 2, 3, 4 and 5 for alleged deliberate indifference to Plaintiff's medical needs following his fall on April 25, 2008.  The California law cause of action again sought to allege liability on behalf of the County and Flores based upon violations of alleged duties under Title 15 of the California Code of Regulations, specifically

Sections 1050(a), 1200(a), and 1208; however, again no facts were added establishing violations of these or other mandatory duties.

9)   Defendant County and Flores filed a motion to dismiss the TAC on July 8, 2011; Plaintiff did not file a timely opposition to the motion, but orally opposed it at the hearing on August 29, 2011.

10)   Like the prior amended complaints, the TAC advances only conclusory allegations that the named Defendants violated mandatory statutory duties, that the County had a policy or procedure which violated Plaintiff's Constitutional rights, that Plaintiff had a qualified ADA disability, and that the County discriminated against Plaintiff by reason of his disability. The deficiencies of the FAC and/or SAC as to Plaintiff's California law claim alleging violation of mandatory duties, the 42 U.S.C. § 1983 claim alleging a County policy/procedure which violated Plaintiff's Constitutional rights, and Plaintiff's ADA claim of discrimination based upon a claimed disability persist in the TAC.

11)   Plaintiff's first cause of action in the TAC claims violations of mandatory duties under California law by the County and Flores based on (1) the failure to assign Plaintiff to a "clinic cell" and (2) failure to provide Plaintiff timely and appropriate medical care after his fall.  Specifically, Plaintiff claims that Title 15 CCR § 1050(a) which states that a facility must have and use a written classification plan for assigning inmates to housing units and activities was violated, but does not allege that a written plan did not exist or that it was not used; Plaintiff merely alleges disagreement with his housing assignment.  He also claims a violation of Title 15 CCR § 1208 which requires a written plan for identifying, assessing, treating, and/or referring an inmate who appears to be in need of treatment, but Plaintiff does not allege that a written plan did not exist; Plaintiff alleges instead that the failure to assign him to a "clinic cell" violates the section.  Finally, Plaintiff alleges violation of Title 15 CCR § 1200(a) for an alleged failure of Defendant Flores to enforce and provide emergency and basic health care services.  Plaintiff's medical care claim is identical to a negligence claim the court has already dismissed with prejudice as it was barred by the applicable statute of limitations.  Further, the only allegation related to the provision of emergency health services at the Fresno County Jail is Plaintiff's allegation that he was no provided emergency medical care after his fall; without more, this

- 4 –

allegation does not give rise to a plausible inference that there is no provision of emergency and basic health care services at the Fresno County Jail.

12) California has a two-year, personal injury statute of limitations. Cal. Code Civ. P. § 335.1. The statute of limitations begins to run when a plaintiff has cause to sue based on knowledge or suspicion of wrongdoing. *See, e.g., Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 803 (Cal. 2005) [citations omitted]. Plaintiff was aware of his alleged lack of care when it occurred. Plaintiff failed to include any allegations as to his care/treatment in the original complaint. Plaintiff did not seek to amend his complaint to include such allegations until months after the statute of limitations had run. Therefore, Plaintiff's breach of duty claim arising out of the alleged failure to provide appropriate treatment after his fall does not relate back to the original complaint and is time-barred.

13) Although Plaintiff's claim for breach of a purported duty to assign him to a cell without bunk beds is not time-barred, after four attempts to plead a "violation of duty claim," a cognizable claim still has not been stated. Under California's Government Claims Act (Cal. Gov. Code § 810 et seq.), there is no common law tort liability for public entities; instead, such liability must be based on statute. *E.g., Guzman v. County of Monterey,* 46 Cal.4th 887, 897 (Cal. 2009). Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty. *Id.* In California, the mandatory duty requirement is strictly construed. *Id.* at 898. The TAC does not sufficiently allege any violation of the regulations upon which Plaintiff bases his "violation of mandatory duty" claim.

14) After numerous attempts, Plaintiff still has not pled a cognizable claim for violation of any mandatory duty under California law. Therefore, there is no need to address \\\
Defendants' immunity defenses. Plaintiff's entire "violation of duty claim" is to be dismissed with prejudice.

15)     Plaintiff asserts 42 U.S.C. § 1983 claims against the County based upon allegations that it employs a housing policy at the Fresno County Jail that is deliberately indifferent to the risk of harm posed by upper bunks to certain detainees and against four Doe defendants, unnamed guards who allegedly failed to provide timely medical care to Plaintiff after he fractured his back.  The TAC breaks these claims into two separate causes of action.

16)     The *Monell* claim is brought against the County which cannot be liable for a constitutional violation on the basis of respondeat superior.  *See, Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978).  A municipal entity is "liable only when 'action pursuant to official municipal policy of some nature caused a constitutional tort.'"  *Christie v. Iopa,*  176 F.3d 1231, 1235 (9th Cir. 1999) (quoting *Monell,* 436 U.S. at 691).  The official municipal policy can be either an expressly adopted policy or a longstanding custom or practice.  *Id.*  A merely negligent policy is not enough, it must amount to deliberate indifference to the Plaintiff's constitutional rights.  *E.g., Mortimer v. Baca,* 594 F.3d 714, 722-723 (9th Cir. 2010).  To prevail on a deliberate indifference claim against a municipal entity, a plaintiff must establish:  (1) violation of a constitutional right; (2) the existence of a municipal policy; (3) that the risk of constitutional violations under the policy is so likely that the need for an improved policy is obvious; and (4) that the challenged policy caused the constitutional injury of which plaintiff complains.  *See, Id.* at 717-718.

17)     After three amended complaints, the theory underlying Plaintiff's *Monell* claim has morphed from a medical care claim to a claim based upon the County's failure to assign Plaintiff to a cell without upper bunks.  Like the prior complaints, the TAC's *Monell* claim does not allege sufficient facts to give rise to a plausible inference that the County's policies are deliberately indifferent to the risks posed to certain inmates by cells with upper bunks.  (The allegations in the FAC and SAC regarding the provision of medical care did not create a plausible inference that the County had a policy of denying medical treatment to inmates or pre-trial detainees and Plaintiff has not attempted to reassert that basis for the *Monell* claim in the TAC.)  The allegations of the TAC establish that the County operates medical care housing as required by California Code of Regulations Title 24 as well as "rubber rooms" for inmates with psychiatric disabilities and establish that the County has policies and procedures in place for

addressing the medical needs of inmates/detainees with psychiatric disabilities and/or physical conditions which might make access to the upper bunks difficult.  (*See,* TAC ¶¶ 8, 10, and 13.)

18)     The only allegation in the TAC supporting Plaintiff's conclusion that the County is deliberately indifferent to the risk posed to certain inmates by upper bunk beds is his claim that he was not properly assigned to a cell without an upper bunk.  The TAC does not contain any allegations that other detainees with similar risks of injury were improperly assigned to cells with bunk beds or that the County is aware of recurring injuries caused to such detainees by assignment to a bunk bed cell.  Allegations of a single instance of misconduct, without more, are insufficient to establish a municipal custom.  *See, e.g., Navarro v. Block,* 72 F.3d 712, 714 (9th Cir. 1996); *see also Merritt v. County of Los Angeles,* 875 F.2d 765, 770 (9th Cir. 1989); *Oklahoma City v. Tuttle,* 471 U.S. 808, 823-824 (1985).

19)     Although in the order on the SAC Plaintiff was given one last opportunity to state a *Monell* claim against the County, he has failed to do so.  Because the claim has evolved from a medical claim to a housing assignment claim, Plaintiff will be given one final opportunity to amend his claim to state a cognizable *Monell* claim.

20)     Plaintiff's second 42 U.S.C. § 1983 claim is a medical care claim brought only against the unnamed guards who discovered him on the floor of his cell.  Plaintiff contends that these guards violated his constitutional rights by failing to take him directly to a medical provider.  (*See,* TAC ¶ 50.)  Claims against the jail staff to address a detainee's medical needs are analyzed under a "deliberate indifference" standard.  *Clouthier v. County of Contra Costa,* 591 F.3d 1232, 1241-1242 (9th Cir. 2010).  Only if a correctional officer knows of and disregards an excessive risk to inmate health and safety can he be liable for the denial of medical care to a detainee.  *E.g., Lolli v. County of Orange,* 351 F.3d 410, 419 (9th Cir. 2003).  The officer must not only be aware of the facts from which an inference could be drawn, but also must draw that inference for liability to attach.  *Gibson v. County of Washoe,* 290 F.3d 1175, 1187 (9th Cir. 2002).  The TAC contains sufficient allegations that the unnamed guards were deliberately indifferent to Plaintiff's need for medical care based upon allegations that they knew:  (1) Plaintiff was in his late sixties; (2) Plaintiff had fallen from the top bunk; (3) Plaintiff suffered injury to his back; (4) Plaintiff was unable to lift himself off of the floor after his fall; (5)

Plaintiff was in extreme pain; and (6) Plaintiff was incapable of ambulating by himself. It would be apparent to a reasonable person upon notice of such facts that prompt medical attention was needed and that placing Plaintiff in a sitting position for an extended period of time and subjecting him to the physical impacts of transporting him to and from court was certain to prolong and likely exacerbate his extreme pain and medical condition. However, it should be noted that this cause of action has not been alleged against the County or Flores, the only defendants named and presently appearing in this action.

21)     The final cause of action in the TAC is the ADA claim brought against the County. The first time this claim was asserted was in the SAC filed on March 4, 2011; prior pleadings did not allege acts of discrimination on the basis of a disability or any qualified ADA disability. It was dismissed as: (1) Plaintiff failed to allege facts sufficient to support that Plaintiff is disabled within the meaning of the ADA or had a mental or physical impairment that substantially limited a major life activity (*See, e.g., Toyota Motor Manuf., Kentucky, Inc. v. Williams,* 534 U.S. 184, 195 (2002).); and (2) none of the allegations demonstrated exclusion from or denial of the benefit of a service, program, etc., by reason of a disability. (*E.g., Simmons v. Navajo County, Arizona,* 609 F.3d 1011, 1021-1022 (9th Cir. 2010).) The TAC seeks to establish that Plaintiff is disabled within the meaning of the ADA by alleging that the Social Security Administration declared Plaintiff "permanently disabled because of mental conditions" in 2003. (TAC ¶ 58.) Liability on the County is premised upon an alleged denial of accommodation for his disability by failing to assign him to a cell without bunk beds. (TAC ¶¶ 58-59.)

22)     To state a claim under the ADA, a plaintiff must allege not only that he is an individual with a qualified ADA disability, but also that he was in some way discriminated against by the public entity by reason of his disability. *E.g., Simmons v. Navajo County, Arizona*, 609 F.3d 1011, 1021 (9th Cir. 2010). Discrimination by reason of a disability may be established by demonstrating it was a motivating factor in an official's decision to exclude the plaintiff from a service or program. *Id.* at 1022. It may also be established for the purpose of pleading an ADA violation by alleging facts demonstrating he was subject to an undue burden by a facially neutral law. *See, McGary v. City of Portland,* 386 F.3d 1259, 1265 (9th Cir. 2004).

23)   Like the SAC, the TAC fails to provide allegations regarding the nature and extent of Plaintiff's purported disability from which it can be inferred that Plaintiff has a qualified ADA disability.  The allegation that Plaintiff was found to be disabled by the Social Security Administration in 2003 for "mental conditions" does not establish a disability as defined by the ADA.  *See, Sanders v. Arneson Prod., Inc.*, 91 F.3d 1351, 1354 n 2 (9th Cir. 1996), *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 523-524 (7th Cir. 1996) ["Because the ADA's determination of disability and a determination under the Social Security disability system diverge significantly in their respective legal standards and statutory intent, determinations made by the Social Security Administration concerning disability are not dispositive findings for claims arising under the ADA.  [Citations omitted.]"], and *Robinson v. Neodata Servs.*, 94 F.3d 499, 502 n 2 (8th Cir. 1996) ["Social Security determinations, however, are not synonymous with a determination of whether a plaintiff is a "qualified person" for purposes of the ADA.  [Citations omitted.]"].  The claim that Plaintiff is disabled due to "mental conditions" does not permit an analysis of his ADA claim including whether failure to assign Plaintiff to a cell without bunk beds is tantamount to a denial of a reasonable accommodation under the ADA or if because of his disability Plaintiff was subjected to an undue burden by the County's policies.  Further, there is no discernible nexus between Plaintiff's "mental conditions" and the accommodation Plaintiff alleges he was denied, a cell without a bunk bed.

24)   Although the TAC was to be Plaintiff's final opportunity to state a viable ADA claim, Plaintiff will be given one more opportunity to amend to state a cognizable ADA claim.

\\\

\\\

THEREFORE, IT IS ORDERED, that:

1)   Plaintiff's breach of duty claims under state law are DISMISSED WITH PREJUDICE;

2)   Plaintiff's *Monell* claim brought against the County under 42 U.S.C. § 1983 is DISMISSED without prejudice and Plaintiff shall have one final opportunity to state a cognizable *Monell* claim;

3)   Plaintiff's ADA claim is DISMISSED without prejudice and Plaintiff shall have one final opportunity to state a cognizable ADA claim; and

4)   Although a cause of action alleging a 42 U.S.C. § 1983 violation survives the motion to dismiss brought by Defendants County and Flores, this cause of action is not alleged against either of these Defendants who are the only Defendants presently named and appearing in this action; Plaintiff is not required to amend either of the causes of action dismissed herein without prejudice, but Defendants County and Flores are entitled to judgment if Plaintiff does not file an amended complaint; Therefore:

a)   Plaintiff shall thirty (30) days from service of this Court's memorandum of decision (which is Wednesday, October 19, 2011) to file an amended complaint against Defendant County and/or Defendant Flores;

b)   If Plaintiff has not filed an amended complaint against Defendant County by October 19, 2011, judgment is to be entered in favor of Defendant County against Plaintiff;

c)   If Plaintiff has not filed an amended complaint against Defendant Flores by October 19, 2011, judgment is to be entered in favor of Defendant Flores against Plaintiff; and

d)   If an amended complaint is filed against Defendant County and/or Defendant Flores, that/those Defendant(s) shall file a responsive pleading within thirty (30) days following service of the amended complaint.

DATED: September 30, 2011

 /s/ OLIVER W. WANGER
United States District Judge, Oliver W. Wanger